NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ROBERT H. WILLIAMS and            :
JOAN M. WILLIAMS,                 :
                                  :
        Plaintiffs                :
                                  :
        v.                        :
                                  :
UHV TECHNOLOGIES, INC.,           :   Civil Action No. 03-1158 (FLW)
INTERNATIONAL DELTA SYSTEMS, LLC  :
d/b/a INDEL SYSTEMS,              :   **MEMORANDUM OPINION**
LIGHT WEAVER TECHNOLOGIES, INC. d/b/a :
LIGHTMATRIX TECHNOLOGIES,         :
BAWA SINGH, NALIN KUMAR, and      :
JOHN DOES I to X                  :
                                  :
        Defendants.               :
                                  :

Presently before the Court is a motion for summary judgment brought by UHV Technologies, Inc. ("UHV"), International Delta Systems, LLC ("Indel") and Light Weaver Technologies, Inc. ("LightMatrix") (collectively, the "Corporate Defendants"), and Bawa Singh ("Singh") and Nalin Kumar ("Kumar," together with Singh, the "Individual Defendants" and together with the Corporate Defendants, the "Defendants") on the Amended Complaints of Joan Williams and Robert Williams (collectively, "Plaintiffs"). In a Memorandum Opinion and Order dated March 23, 2005 (the "Opinion"), the Court granted Defendants' motion for summary judgment on all Counts of Plaintiffs' Amended Complaints except Count V of Robert Williams' Amended Complaint and Count III of Joan Williams' Amended Complaint. These counts concern Plaintiffs' claims under the Consolidated Omnibus Budget Reconciliation Act of 1985,

1

29 U.S.C. § 1001, et seq. ("COBRA"). The Court also directed the parties to submit supplemental briefs addressing Plaintiffs' COBRA claims, including the issue of whether multiple entities, if considered as a single employer for COBRA purposes, are obligated to provide continuing COBRA coverage under the benefits plan of one entity to terminated employees of another entity. See Opinion at 33-37. The Court has considered the parties' supplemental briefs, in addition to their submissions in connection with the Defendants' initial motion for summary judgment, pursuant to Fed.R.Civ.P. 78, and for the reasons stated below, the Defendants' motion for summary judgment on Count V of Robert Williams' Amended Complaint and Count III of Joan Williams' Amended Complaint is granted.[1]

## I. BACKGROUND[2]

Plaintiffs allege that the Defendants wrongfully terminated their COBRA benefits several months prior to the statutorily mandated end date. See Opinion at 13; see also 29 U.S.C. § 1162(2)(B) (stating that COBRA generally mandates 18 months of post-employment coverage).

---

[1] With respect to Plaintiffs' COBRA claim, the Court incorporates its findings of fact and law stated in its Opinion.

[2] The Court notes that the Defendants have submitted additional evidence that they deem necessary for the Court's determination of the COBRA issue. See Defs. Supp. Br., Frattarelli Supp. Cert. The Court is at a loss to understand why the Defendants did not submit these additional materials in connection with their initial motion for summary judgment. Such additional information regarding the stock ownership and control between the Individual Defendants, UHV and LightMatrix, and the date of termination of UHV's health plan, would have assisted this Court in determining the viability of Plaintiffs' COBRA claims in the first instance. The Defendants now contend that the cases discussed in this Court's Opinion are inapposite because Plaintiffs' COBRA claims contain important factual distinctions. However, in their initial motion for summary judgment, the Defendants made no attempt to discuss these distinctions or analogous case law that would have provided a more sound analytical basis from which to discuss the issues in Plaintiffs' COBRA claims. Instead, the Defendants merely stated in their initial motion that Plaintiffs' COBRA benefits were rightfully terminated because Plaintiffs were under Indel's health plan and that plan was terminated soon after Indel ceased its operations. The Defendants even acknowledged that Plaintiffs raised the issue of whether UHV or LightMatrix could have been considered Plaintiffs' employer; however, the Defendants dismissed such argument as "not relevant to the issue of whether Plaintiffs' rights under COBRA were breached ...." Defs. Mot. Summ. J. at 39, n. 14.

According to the record, Plaintiffs' COBRA benefits were terminated in July 2002, approximately fifteen months after their termination from Indel. The record shows that Plaintiffs were informed of their COBRA discontinuation by letters dated July 19, 2002 from Indel's COBRA administrator. See Defs. Mot. Summ. J., Ex. T, U. Plaintiffs assert that because they also worked for LightMatrix and UHV - companies that were in operation after Indel's closure in June 2002 - Plaintiffs should have been provided the remaining two months of COBRA coverage, or, in the alternative, proper notice that neither LightMatrix nor UHV could provide continuing coverage. The Defendants, on the other hand, claim that the issue of whether UHV or LightMatrix could also be considered Plaintiffs' employer for the purpose of COBRA coverage is irrelevant because Plaintiffs were members of Indel's group health plan, which ceased to exist as of August 1, 2002.[3] The Defendants argue that Plaintiffs' COBRA claim is meritless because an employer may terminate COBRA rights if it stops providing a group health plan to all of its employees. See 29 U.S.C. § 1162(2)(B). According to the record, Robert Williams acknowledged that COBRA benefits should have been provided "as long as [Indel was] in business." Defs. Mot. Summ. J., Ex. A at 167.

The crux of Plaintiffs' argument is that they should have been afforded an additional two months of COBRA coverage after the termination of Indel's health plan on August 1, 2002 because the Corporate Defendants "collectively act[ed] as a controlled group of corporations for the purposes of obtaining medical benefits." Pls. Supp. Br. at 8. Plaintiffs also claim that each of the Corporate Defendants qualifies as Plaintiffs' employer. Id. at 9-10. Plaintiffs further assert that, the stock ownerships of Singh and Kumar in the Corporate Defendants and the parent-

---

[3] The Court notes that in their initial motion for summary judgment, the Defendants did not specifically allege that Indel, LightMatrix and UHV were separate companies. See Defs. Reply at 14.

subsidiary relationships between UHV, Indel and LightMatrix, were sufficient to create a controlled group of corporations that was obligated to provide Plaintiffs with COBRA benefits once Indel's health plan was terminated.[4]  According to Plaintiffs, UHV provided, and paid for, the health benefits of all of the Corporate Defendants' employees during part of the time that Plaintiffs were employed by the Defendant entities.  However, Plaintiffs claim that on August 2001, they were put on LightMatrix's health plan.  See id. at 4.  Plaintiffs thus argue that "the purchasing, negotiating and collecting of premium [was] shared by all parties," id. at 10, that such collective group effort was evidence of the existence of a controlled group of corporations as defined by 26 U.S.C. § 1563, and that Plaintiffs should have been provided benefits "to the extent that they [were] provided by any of the entities in the controlled group of corporations." Id. at 10.

On the contrary, the Defendants claim that the Corporate Defendants cannot be considered a "single employer" for COBRA purposes because the Corporate Defendants did not constitute a "controlled group" within the meaning of COBRA.  See Defs. Supp. Br. at 1-4, 7-9.  The Defendants further claim that under the COBRA rules, only "plan sponsors" are obligated to provide continuing COBRA coverage to terminated employees and since the Corporate Defendants separately sponsored different health plans, Plaintiffs were not entitled to benefits under a non-Indel plan.  Id. at 5-7.

According to the additional information provided by the Defendants in their supplemental brief, UHV's health plan was terminated on July 31, 2002.  See Defs. Supp. Br. at 2.  The Defendants thus claim that UHV could not have provided COBRA benefits to Plaintiffs under its

---

[4] Based on the information provided by the parties in connection with the Defendants' initial motion for summary judgment, the Court discerned that (i) Indel and LightMatrix were wholly owned by UHV, (ii) Singh and Kumar each had fifty percent ownership of UHV prior to January 2003, (iii) Singh had one-third ownership of UHV while Kumar had two-thirds ownership after January 2003, and (iv) Kumar and Singh collectively owned all of the corporate stock of LightMatrix.  See Opinion at 3.

4

plan after the termination of Indel's health plan.  Moreover, the Defendants contend that by July 2002, neither UHV nor the Individual Defendants "had [a] substantive or corporate connection with Light Matrix ...."  Id. at 2.  While the Defendants do not dispute that Singh and Kumar each had fifty percent ownership of UHV prior to January 2003, the Defendants assert that by November 2000, UHV had only twenty percent common stock ownership of LightMatrix.  See id. In addition, when Singh and Kumar were terminated from LightMatrix in March 2002, the stock ownership of LightMatrix was divided between the Individual Defendants, who each held approximately twenty percent of common stock, and a group of investors unrelated to the Individual Defendants and UHV, that collectively held approximately forty percent of LightMatrix preferred stock.  See id. at 3.  The Defendants claim that after March 2002, the Individual Defendants as well as UHV "had no ownership, managerial or controlling interest in LightMatrix."[5]  Id.  Thus, when UHV and Indel ceased their respective health plans in July 2002, "those corporations had no ability to transfer the COBRA rights of terminated Indel employees over to the LightMatrix plan."  Id.

In light of the new information provided by the Defendants, the Court finds that Plaintiffs were not entitled to the additional two months of COBRA benefits after Indel's health plan was terminated in July 2002.

---

[5] The Court notes that the Defendants mistakenly assert that the Individual Defendants "never initially had any shares in LightMatrix."  Defs. Supp. Br. at 2-3.  The Defendants contend that Singh and Kumar only had options to purchase ownership shares in LightMatrix and thus did not have outright stock ownership in the company.  However, 26 U.S.C. § 1563(e)(1) clearly states that "[i]f any person has an option to acquire stock, such stock shall be considered as owned by such person."  26 U.S.C. § 1563(e)(1).

## II. DISCUSSION

### A. Standard of review

Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, a nonmoving party may not rest upon mere allegations, general denials, or vague statements in opposition to a summary judgment motion. Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Engineers, 982 F.2d 884, 890-91 (3d Cir.1992) (internal citations omitted). Instead, the nonmoving party must set forth specific facts "by means of affidavits, depositions, answers to interrogatories, or admissions ... that show there is a genuine issue for the trier of fact to resolve." Cooper v. Cape May County Board of Social Servs., 175 F.Supp.2d 732, 741 (D.N.J. 2001) (citations omitted). If the nonmoving party's evidence is merely colorable, or not significantly probative, summary judgment may be granted. Bowles v. City of Camden, 993 F.Supp. 255, 261 (D.N.J. 1998) (citations omitted). Conclusory allegations do not meet the non-moving party's duty to set forth specific facts showing that a genuine issue of material fact exists and a reasonable factfinder could rule in its favor. See Ridgewood Board of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir.1999). At the summary judgment stage, it is not the role of this Court to weigh the evidence or to evaluate its credibility, but to ascertain whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249. Therefore, the Court must "view the inferences to be drawn from the underlying facts in the light most favorable to the [nonmoving] party." Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir.2002) (quoting Bartnicki v. Vopper, 200 F.3d 109, 114 (3d Cir.1999)).

B.   COBRA

COBRA requires an employer which sponsors a group health plan for its employees to provide continuation coverage for employees who lose their coverage as a result of a qualifying event. See 29 U.S.C. § 1161 et seq. Termination of employment constitutes a qualifying event. See 29 U.S.C. § 1163(2). The continuation coverage is for a maximum period of eighteen months, but such coverage need only extend until the "date on which the employer ceases to provide any group health plan to any employee." 29 U.S.C. § 1162(2)(B). In the present matter, it is undisputed that Indel ceased operations in June 2002. Furthermore, continuing COBRA coverage is "defined by the plan, rather than by a particular benefits policy that was in effect at a given time." Zemko v. Muntz Industries, Inc., No. 94-761, 1997 WL 158318, at *4 (N.D.Ill. Mar. 31, 1997). If an employer maintains more than one plan, COBRA continuation must be provided so long as any plan is offered by the employer. See Local 217, Hotel & Restaurant Employees Union v. MHM, Inc., 976 F.2d 805, 810 (2d Cir.1992); see also S.R. No. 99-146, at 324 (1986).

COBRA incorporates 26 U.S.C. § 414(t) in its definition of "employer." See 29 U.S.C. § 1167(4); see also Gates v. Victor Fine Foods, 54 F.3d 1457, 1464 n. 5 (9th Cir.1995); Granger v. Aamco Automatic Transmission, Inc., No. 91-2409, 1992 WL 233861, at *3 (D.N.J. Sept. 9, 1992); Winchel v. Associated Training Servs. Corp., No. 99-816, 2000 WL 34229421, at *4 (W.D.Wis. Aug. 30, 2000). Section 414(t) in turn refers to § 414(b), which provides that "all employees of all corporations which are members of a controlled group of corporations (within the meaning of section 1563(a) ...) shall be treated as employed by a single employer." 26 U.S.C. § 414(b) (emphasis added). 26 U.S.C. § 1563(a) defines two types of controlled groups:

> (1) **Parent-subsidiary controlled group**.–One or more chains of corporations connected through stock ownership with a common parent corporation if --
> (A) stock possessing at least 80 percent of the total combined voting power

  of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of stock of each of the corporations, except the common parent corporation, is owned ... by one or more of the other corporations; and

   (B) the common parent corporation owns ... stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of stock of at least one of the other corporations, excluding, in computing such voting power or value, stock owned directly by such other corporations.

  (2) **Brother-sister controlled group**.--Two or more corporations if 5 or fewer persons who are individuals, estates, or trusts own ... stock possessing more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation.

Furthermore, 26 U.S.C. § 1563(f)(5) provides that for any provision of law that incorporates the controlled group definition under 26 U.S.C. § 1563(a), the brother-sister controlled group definition also includes the stock ownership of "at least 80 percent of the total combined voting power of all classes of stock entitled to vote, or at least 80 percent of the total value of shares of all classes of stock, of each corporation ...." 26 U.S.C. § 1563(f)(5)(A). Cases that have applied the controlled group definition in the context of COBRA coverage have addressed the issue strictly in terms of the stock ownership between multiple entities.[6] See e.g. Gates, 54 F.3d at 1464 (stating that "COBRA determines a parent corporation's liability, not by examining how much actual control the parent exercised over the subsidiary, but solely by reference to the parent's stock ownership of the subsidiary."); see Carner v. MCS - 576 5th Avenue Inc., 992 F.Supp. 340, 352-54 (S.D.N.Y. 1998); Granger, 1992 WL 233861, at *3; Winchel, 2000 WL 34229421, at *4.

**C. Applicability of the controlled group definition**

---

[6] Under 26 U.S.C. § 1563(e)(5), stock ownership held by a corporation is attributed to shareholders of the owning corporation according to the percentage of their holdings in that corporation. See 26 U.S.C. § 1563(e)(5); IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc., 788 F.2d 118, 123 (3d Cir.1986).

The Court previously noted that in the absence of any Third Circuit law addressing whether multiple entities, if considered as a single employer for COBRA purposes, are obligated to provide continuing COBRA coverage under the benefits plan of one entity to terminated employees of another entity, it was reasonable to rely on the controlled group definition under the COBRA rules to determine the issue since such definition has been used to determine whether an employer is obligated to provide COBRA benefits in the first instance and whether an employer properly followed the COBRA notification rules. See Opinion at 34-36.  The Defendants, while not having discussed any analogous cases in their initial motion for summary judgment, claim that the cases noted by the Court in its Opinion are inapposite because such cases involved "one group health plan for all employees" where liability was imposed "only upon the actual sponsor of the health plan which covered the employees." Defs. Supp. Br. at 5.  According to the Defendants, only plan sponsors are responsible for providing continuing COBRA coverage. Because UHV and LightMatrix maintained separate plans and were not sponsors of the Indel-sponsored benefits plan, the Defendants claim that Plaintiffs were not entitled to COBRA benefits from an "entirely different plan [under] which Plaintiffs never participated." Id. at 7.  The Defendants, however, base this argument on the assumption that neither UHV nor LightMatrix was Plaintiffs' employer.  Upon consideration of the relevant COBRA statutes, the Court finds that such assumption is unwarranted.

Under 29 U.S.C. § 1161(a), continuation coverage is required from a plan sponsor to those individuals who lose coverage under such plan due to a qualifying event. See 29 U.S.C. § 1161(a). 29 U.S.C. § 1002(16)(B) defines the term "plan sponsor" as, among other things, "the employer in the case of an employee benefit plan established or maintained by a single employer

9

...." 29 U.S.C. § 1002(16)(B) (emphases added).  An "employer" for COBRA purposes, is "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan ...."  29 U.S.C. § 1002(5).  The meaning of "single employer," as previously discussed in this Court's Opinion, has been determined by other courts using the controlled group definitions under the COBRA rules.  Thus, the treatment of these COBRA definitions indicates that the Court first needs to determine whether UHV or LightMatrix could have qualified as Plaintiffs' employer before determining whether Plaintiffs were entitled to continuing COBRA benefits from the plans of either entity.  The Court must look at whether UHV or LightMatrix acted as an employer in relation to an employee benefit plan or whether such entities constituted a "single employer" that maintained or established a benefit plan.

  The Court first notes that while Plaintiffs claim that they worked for all three entities, the record shows that Plaintiffs were the official beneficiaries of the Indel-sponsored health plan, were hired by and terminated from Indel, and received paychecks from Indel.  In addition, although Plaintiffs allege that there was a "written work sharing agreement for employees between the defendant entities," Pls. Supp. Br. at 3, the record indicates that such agreement was merely a contract or a joint agreement between the Corporate Defendants under which Robert Williams, as the director of manufacturing at Indel, was responsible for carrying out on behalf of Indel.  See id., Ex. 1 at 115.  Finally, while Plaintiffs claim that the correspondence they received regarding their health plans had either the signature of a LightMatrix employee or was written on LightMatrix letterhead, see Pls. Supp. Br. at 3-4, the Court finds that such documents are irrelevant in determining whether LightMatrix was Plaintiffs' employer under the applicable COBRA rules.

10

Additionally, the Corporate Defendants did not constitute a single employer for COBRA purposes; therefore, neither UHV nor LightMatrix was obligated to provide Plaintiffs continuing COBRA benefits from a non-Indel plan. The record does not support a parent-subsidiary or brother-sister relationship between UHV and LightMatrix. According to the new information provided by the Defendants, UHV had only twenty percent common stock ownership of LightMatrix at the time Indel's health plan was terminated in July 2002. Although the Individual Defendants each had fifty percent ownership of UHV prior to January 2003, the combination of UHV's shares in LightMatrix and the twenty percent stock ownership of each of the Individual Defendants in LightMatrix (collectively totaling sixty percent stock ownership in LightMatrix) still fails to meet the eighty percent stock ownership test in both the parent-subsidiary and brother-sister controlled group definitions. Moreover, although UHV was Indel's parent, UHV had terminated its health plan around the same time Indel's health plan was terminated and therefore could not have provided Plaintiffs continuing COBRA benefits from its plan. Thus, at the time Indel's health plan was terminated in July 2002, LightMatrix was the only entity with an existing health plan and the only viable "plan sponsor." However, since the evidence does not demonstrate that UHV and LightMatrix constituted a single employer, LightMatrix was not required to provide Plaintiffs with continuing COBRA benefits from its health plan. Plaintiffs' COBRA benefits rightfully terminated upon the cessation of Indel's health plan.

### III.     CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment on Count V of Robert Williams' Amended Complaint and Count III of Joan Williams' Amended Complaint is granted.  The Court will issue an appropriate order.


Date:   June 20, 2005                                                          /s/ Freda L. Wolfson
                                                             Honorable Freda L. Wolfson
                                                             United States District Judge